UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| BRYIANT OVERTON, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | NO. 3:19-cv-00003 |
| STATE OF TENNESSEE, | ) |  |
| Respondent. | ) |  |

## MEMORANDUM OPINION AND ORDER

Bryiant Overton has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. No. 1). The State of Tennessee ("Tennessee") moved to dismiss the Petition, arguing that it is untimely. (Doc. Nos. 29, 31). The Court disagrees.

**I.    BACKGROUND**

    A.    Mr. Overton's State Court Proceedings

On March 25, 2009, Mr. Overton was convicted of attempted murder, aggravated robbery, kidnapping, and conspiracy to commit kidnapping. (Doc. No. 28-1 at 1). A jury found that after a drug deal went wrong, Mr. Overton took a woman to a ditch, shot her multiple times, and left her there. (Doc. No. 28-12 at 1–3).

Mr. Overton appealed to the Tennessee Court of Criminal Appeals ("TCCA"), which affirmed his convictions on February 15, 2011. (Id. at 1, 11). According to the docket for his state court proceedings,[1] Mr. Overton did not pursue his direct appeal any further. But on February 2, 2012, he filed a petition in state court collaterally attacking his convictions. (Doc. No. 28-15 at

---

[1] The Court may "take judicial notice of entries from its docket or another court's [docket]." Cunningham v. Rapid Response Monitoring Serv., Inc., 251 F. Supp. 3d 1187, 1191 n.1 (M.D. Tenn. 2017).

3). The trial court denied the petition on March 31, 2016, and the TCCA affirmed the denial on January 4, 2018. (Id. at 137; Doc. No. 38-1 at 20).

Next, Mr. Overton looked to the Tennessee Supreme Court ("TSC") for relief. He wrote a pro se application for permission to appeal the TCCA's decision to the TSC ("TSC Application"). (Doc. No. 42 at 4). According to the TSC Application's certification of service, Mr. Overton handed it off to "mailroom authorities" at his prison on February 28, 2018. (Id. at 15).

What happened next is unclear. It appears the prison mailroom sent the TSC Application to the Clerk of the Appellate Courts ("Clerk").[2] (See Doc. No. 42 at 4). The Clerk marked the application as "received" on March 12, 2018. (Id.). Next, the Clerk apparently filed the TSC Application on the docket but labeled it as "correspondence" as opposed to as a party filing. https://www.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=66628&Party=True (all websites last visited March 4, 2022). In fact, the TSC Application is not viewable in the online version of the state court docket like other filings, id.; it is only available in the physical version of the docket (see Doc. No. 42). Although Mr. Overton appears to believe someone rejected the TSC Application as untimely, it is not clear what that belief is based upon.[3] (See Doc. No. 38-1 at 56–60). Neither the parties' filings in this Court nor the docket for Mr. Overton's state court proceedings contain any decision from the TSC (or even the Clerk, for that matter) concerning Mr. Overton's TSC Application.

---

[2] The Clerk serves "the Tennessee Supreme Court, Tennessee Court of Appeals and Tennessee Court of Criminal Appeals." https://www.tncourts.gov/courts/appellate-court-clerks-office/about.

[3] It may stem from the TCCA's mandate for its decision to affirm the denial of Mr. Overton's state court petition issued on the same date the Clerk received the TSC Application, https://www.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=66628&Party=True, given that Mr. Overton subsequently filed a Motion to Recall Mandate in which he argued that the TSC Application was timely (see Doc. No. 38-1 at 56–60).

B.      Mr. Overton's Federal Court Proceedings

Mr. Overton filed the Petition in this Court on January 4, 2019. (Doc. No. 1). Tennessee filed a Motion to Dismiss on June 24, 2021,[4] arguing the Petition was untimely. (Doc. No. 31). The parties fully briefed the motion. (Doc. Nos. 31, 32, 38, 39). The Court issued an order dismissing the Petition as untimely on January 28, 2022 ("Order") (Doc. No. 41). However, the Order relied upon publicly available online records of Mr. Overton's state court proceedings which, as noted above, did not contain the TSC Application. (Id. at 1, 2, 5–6). Subsequently, it came to the Court's attention that the state court docket (available in physical form, as opposed to online) contained the TSC Application. (Doc. No. 42). For that reason, the Court vacated the Order and directed the parties to file briefs addressing the impact that the TSC Application has on Tennessee's timeliness argument. (Id.). The parties submitted their briefs on February 11, 2022 and March 4, 2022. (Doc. Nos. 43, 47).

## II.    LEGAL STANDARD

A § 2254 petition is subject to a "1-year period of limitation" under 28 U.S.C. § 2244(d). Generally, the limitation period begins running when the petitioner's "judgment of conviction" becomes "final."[5] Id. A conviction becomes "final" upon the "expiration of the time for seeking [direct] review" of the conviction. Id.

---

[4] Tennessee originally moved to dismiss the Petition a day earlier, on June 23, 2021. (Doc. No. 29). It refiled its motion to ensure compliance with the Court's Local Rules. (See Doc. No. 31). Hence, the docket contains two nearly identical motions to dismiss. (Doc. Nos. 29, 31). The Court will dispose of both motions simultaneously in the interest of efficiency.

[5] The limitation period runs from the "latest of" four possible dates. 28 U.S.C. § 2244(d). However, neither party asserts that Mr. Overton's limitation period should run from any date other than the date on which his conviction became final.

3

Notably, the limitation period applicable to § 2254 petitions does not always expire one calendar year after the petitioner's conviction becomes final. See id. Instead, the period is statutorily tolled for any "time during which a properly filed application for State post-conviction [relief] or other collateral review . . . is pending." Id. An application remains "pending" until it "has achieved final resolution through the State's postconviction procedures." Lawrence v. Fla., 549 U.S. 327, 332 (2007) (citation and quotation omitted). Final resolution is achieved once "no other state avenues for relief remain open." Id.

### III. ANALYSIS

The "party asserting statute of limitations as an affirmative defense," which is Tennessee, "has the burden of demonstrating that the statute has run." Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002); see also Simmons v. United States, 974 F.3d 791, 797 (6th Cir. 2020) ("[D]efendants typically bear the burden to show that a plaintiff's claim is outside a statute of limitations."). Tennessee has failed to meet this burden because it has not shown when (or if) Mr. Overton's limitation period expired. Hence, the Petition survives dismissal.

    A.    <u>Tennessee Has Not Demonstrated Mr. Overton's Limitation Period Expired Before He Filed the Petition.</u>

Tennessee has failed to show when Mr. Overton's limitation period ended. The limitation period began to run when Mr. Overton's judgment became "final" on April 18, 2011.[6] 28 U.S.C. § 2244(d). Mr. Overton tolled the limitation period 290 days later, when he filed a petition for post-conviction relief in state court on February 2, 2012. (Doc. No. 28-15 at 3). The limitation period remained tolled while the state trial court and the TCCA considered Mr. Overton's petition.

---

[6] That was the last date on which Mr. Overton could have filed an "application for permission to appeal" the TCCA's February 15, 2011 denial of his direct appeal. See Tenn. R. App. P. 11; Tenn. R. App. P. 21.

4

28 U.S.C. § 2244(d).  After the TCCA affirmed the denial of the petition on January 4, 2018 (Doc. No. 38-1 at 20), Mr. Overton further tolled the limitation period by filing the TSC Application on February 28, 2018[7] (Doc. No. 42 at 4, 15).  It is unclear what happened to the TSC Application after that, as previously discussed.  However, one thing *is* clear: Tennessee has not produced or identified a ruling from the TSC on the TSC Application.  Absent such a ruling, it is impossible for the Court to determine when Mr. Overton's tolling and limitation periods ended, if they have ended at all.[8]  See Lawrence, 549 U.S. at 332 (where petitioners appeal to a state's highest court, the tolling period ends after "the State's highest court has issued its mandate or denied review").  Hence, Tennessee has not met its burden of proving that Mr. Overton's tolling and limitation periods expired before he filed the Petition.  See Griffin, 308 F.3d at 653.

      B.    <u>Tennessee's Argument That Mr. Overton's Limitation Period Ended After the TCCA Affirmed the Denial of His State Court Petition Is Unavailing.</u>

Tennessee's counterarguments do not persuade the Court.  Tennessee contends the TSC Application did not toll Mr. Overton's limitations period because it was "never properly filed with

---

[7] The TSC Application was timely "filed" when Mr. Overton handed it off to prison mailroom officials.  Filings "prepared by or on behalf of a pro se litigant incarcerated in a correctional facility . . . shall be timely if the papers were delivered to the appropriate individual at the correctional facility within the time fixed for filing."  Tenn. R. App. P. 20(g).  The time fixed for filing the TSC Application was any time before March 5, 2018, which was 60 days after the entry of the TCCA's judgment on January 4, 2018.  See Tenn. R. App. P. 11.

[8] This raises the *possibility* that Mr. Overton may not have exhausted his state court claim, as required.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  That possibility, in turn, raises the complex question of whether the exhaustion requirement for claims like Mr. Overton's would apply where, as here, it appears the state court may not be aware of—or planning to ever rule on—a prisoner's motion.  However, the parties have not raised or briefed these issues.  Hence, the Court will not address them at this time.  See Walker v. Smith, 360 F.3d 561, 564 (6th Cir. 2004) (choosing not to address an issue "[g]iven the parties' silence" on it).

the TSC." (Doc. No. 43 at 4). Tennessee correctly points out that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." (Id. at 4–5 (citing Artuz v. Bennett, 531 U.S. 4, 10 (2000)). Tennessee argues the TSC Application "failed to comply with Tenn. R. App. P. 11.01, requiring '[e]very pleading, written motion, and other paper to be signed by [] the party.'" (Id. at 4).

The problem with Tennessee's argument is that it cites a rule that does not exist.[9] There is no "Tenn. R. App. P. 11.01." It appears Tennessee confused the Tennessee Rules of Appellate Procedure with the Tennessee Rules of Civil Procedure. Rule 11.01 of the Tennessee Rules of Civil Procedure does state that "[e]very pleading, written motion, and other paper shall be signed" by a party or their attorney. Tenn. R. Civ. P. 11.01. But that is immaterial because "Rule 11 of the Tennessee Rules of Civil Procedure . . . does not apply to the appellate courts." Hood v. Roadtec, Inc., 785 S.W.2d 359, 365 (Tenn. Ct. App. 1989); see also Irvin v. City of Clarksville, 767 S.W.2d 649, 654 (Tenn. Ct. App. 1988) ("The Tennessee Rules of Civil Procedure do not apply to the Court of Appeals."). Plus, the TSC Application satisfies the requirements of Rule 11 of the Tennessee Rules of *Appellate* Procedure. It states (1) "the date on which the [TCCA's] judgment was entered and whether a petition for rehearing was filed," (2) "the questions presented for review and, for each question presented, a concise statement of the applicable standard of review," (3) "the facts relevant to the questions presented, with appropriate references to the record,"[10] and (4) "the reasons, including appropriate authorities, supporting review by the [Tennessee] Supreme Court." Tenn. R. App. P. 11.

---

[9] Another problem with its argument is that the TSC Application bears Mr. Overton's typewritten name and its certificate of service bears his handwritten signature. (Doc. No. 42 at 14–15).

[10] Notably, "facts correctly stated in the opinion of the intermediate appellate court need not be restated in the application." Tenn. R. App. P. 11.

6

Tennessee also asks the Court to find the TSC Application was not properly filed because the Clerk "crossed out the 'Filed' stamp" on the document "in order to mark the application only as 'Received.'" (Doc. No. 43 at 5). However, Sixth Circuit precedent shows that an application marked "Received" instead of "Filed" by a clerk may still have been properly filed under 28 U.S.C. § 2244(d) including where, as here, the clerk may have incorrectly docketed the application. Walker v. Smith, 360 F.3d 561, 563 (6th Cir. 2004) (holding a petitioner's state court post-conviction motion which was "stamped as received" by the court clerk and "never appeared on the state court's docket sheets" was still "properly filed" under 28 U.S.C. § 2244(d)). Tennessee's argument would be far more compelling if it could identify an actual ruling by the TSC stating Mr. Overton's application was improperly filed or untimely. See Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."). But Tennessee has identified no such ruling.

## IV. CONCLUSION

For the foregoing reasons, Tennessee's Motions to Dismiss (Doc. Nos. 29, 31) are **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE